**REMAND / JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8357-GW-GJSx | Date | December 7, 2020 |
|---|---|---|---|
| Title | *Janet Snyder v. Teva Pharmaceuticals USA, Inc., et al.* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

None Present      None Present

**PROCEEDINGS:**    **IN CHAMBERS - FINAL RULING ON PLAINTIFF'S MOTION TO REMAND CASE TO CALIFORNIA STATE COURT [11]**

Attached hereto is the Court's Final Ruling. The Court GRANTS the motion and remands this action back to state court.

Initials of Preparer    JG

<u>*Janet Snyder v. Teva Pharmaceuticals USA, Inc. et al.*</u>; Case No. CV-20-8357-GW-(GJSx)
Final Ruling on Motion to Remand

**I. Background**[1]

  The parties dispute whether the plaintiff Janet Snyder ("Snyder") fraudulently joined a non-diverse defendant in this products liability lawsuit in order to avoid federal jurisdiction. For the reasons discussed below, the Court finds that the non-diverse defendant was not fraudulently joined and therefore **GRANTS** the Snyder's motion to remand.

  A. <u>Factual Background</u>

  In 2014, Snyder had a intrauterine device, *i.e.* the ParaGard T380A Intrauterine Copper Contraceptive ("ParaGard"), implanted. *See* Compl. ¶¶ 54-55. In August 2018, Snyder's physician tried to remove the ParaGard, but a part of the ParaGard broke while still inside Snyder's body. The physician was unable to remove the part, and so a month later Snyder underwent surgery to remove it. *Id.* ¶¶ 57-58.

  Snyder brought this products liability lawsuit alleging that the ParaGard devices were defective because they broke too easily when removed.[2] She filed her lawsuit in Los Angeles County Superior Court against the following defendants: (1) Teva Pharmaceuticals USA, Inc.; (2) Teva Women's Health, LLC; (3) Teva Women's Health, Inc.; (4) The Cooper Companies, Inc. ("CooperCo"); and (5) CooperSurgical, Inc. ("CooperSurgical"). The Defendants removed the case to federal court on the basis of diversity jurisdiction. *See* NoR. Although CooperCo is a California corporation and Snyder is a California citizen, the Defendants argue that there nevertheless is diversity jurisdiction because CooperCo was fraudulently joined by Snyder.

  B. <u>The Alleged Connection between CooperCo and the ParaGard</u>

  Snyder argues that there are two grounds for her to bring claims against CooperCo, and that either of them on their own would be sufficient to show that CooperCo was not fraudulently joined. However, even accepting either of those grounds, there would have to be a showing of a basis for a claim against CooperCo itself rather than merely an assumed result of establishing

---

[1] The following abbreviations are used for the filings: (1) Notice of Removal ("NoR"), ECF No. 1; (2) Complaint ("Compl."), ECF No. 1-2; (3) Plaintiff's Motion to Remand ("Mot."), ECF No. 11; (4) Asset Purchase Agreement ("APA"), ECF No. 11-2; (5) Defendants' Opposition to Plaintiff's Motion to Remand ("Opp."), ECF No. 25.

[2] She alleges state law claims for negligence, design and manufacturing defects, failure to warn, fraud, negligent misrepresentation, and breach of express and implied warranties. *See* Compl.

CooperSurgical's liability, if any, for Snyder's causes of action.

First, Snyder puts forth a variation of a successor-liability theory. This argument rests on a 2017 Asset Purchase Agreement ("APA"), in which CooperSurgical bought the ParaGard assets (including the manufacturing facility in Buffalo, NY) for $1.1 billion from Teva Pharmaceutical Industries Ltd. (an Israeli company that is not party in this case).[3] *See* APA at 1 of 121. CooperSurgical is a wholly-owned subsidiary of CooperCo. *See* APA at 117 of 121. Snyder argues that, even though the APA stated that CooperSurgical would not be assuming responsibility for injury claims arising from pre-APA implants of the device (*see* Annex 9.1(d)(vii) to the APA), "Cooper knew or should have known the Teva Defendants fraudulently conveyed its assets during its purchase of ParaGard to avoid creditors/claimants such as Plaintiff."[4] *See* Mot. at 1-2. As such, CooperCo assumed all of the Teva defendants' pre-purchase liabilities arising from the ParaGard business, including Snyder's claims in this lawsuit.

Second, Snyder argues that as a result of the 2017 purchase, CooperCo "owned the prescription intrauterine drug ParaGard® T380A Intrauterine Copper Contraceptive . . . on the date of her injury – September 17, 2018, [and] Cooper breached its continuing duty to warn of the dangerous propensities of the contraceptive breaking upon removal . . . ." *See* Mot. at 1-2.

## II. Legal Standard

Although diversity jurisdiction usually requires complete diversity of citizenship, that requirement is relaxed "where a non-diverse defendant has been fraudulently joined." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

Joinder can be fraudulent in one of two ways. First, there can be "actual fraud in the pleading of jurisdictional facts." *Grancare, LLC v. Thrower*, 889 F.3d 543, 548-49 (9th Cir. 2018). Second, it can be fraudulent "if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Hunter*, 582 F.3d at 1043 (quoting *Hamilton Materials*, *Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206

---

[3] In the Complaint, it is alleged that CooperCo "purchased assets and global rights and business of the ParaGard IUD in September 2017 for $1.1 Billion, including their [sic] manufacturing facility in Buffalo, New York." *See* Comp. ¶ 14. However, the APA attached to Synder's Motion to Remand indicates that CooperSurgical was the buyer. *See* Exhibit A to Mot. at 1.

[4] The Complaint at paragraphs 20-23 delineate the bases for Snyder's contention that "[t]he Cooper Defendants are liable as successors-in-interest under the California Uniform Fraudulent Transaction Act and the Federal Consumer Protection Act pursuant to a fraudulent conveyance or transfer of assets." *See* ECF No. 1-2.

2

(9th Cir. 2007)). Conversely, "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Id*. at 1044.

The burden of proving a fraudulent joinder is a heavy one because the removing defendant must prove that there is virtually no possibility that the plaintiff will be able to establish a cause of action against it in state court. *See GranCare,* 889 F.3d at 548 ("A defendant invoking federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against [finding] fraudulent joinder.'" (alteration in original)).

## III. Discussion

Generally, when a company sells or otherwise transfers its assets to another company, the purchaser is not liable for the debts and liabilities of the seller. There are exceptions for when: "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1327 (2012).

CooperSurgical – not its parent, CooperCo – purchased the ParaGard assets in 2017. *See* APA at 5 of 121. Therefore, assuming Snyder's continuing-duty and successor-liability based on fraudulent conveyance theories are correct[5], it was CooperSurgical that assumed the continuing duty to warn existing customers and it was CooperSurgical (on a theory of successor liability) that assumed any pre-existing liabilities of the seller.

Generally, a subsidiary and its parent are separate entities. However, alter ego liability provides an exception where a parent company may be held responsible for a subsidiary's liabilities.

Accordingly, to be able to assert claims against CooperCo, Snyder must first show that she can assert a plausible claim against CooperSurgical, and then provide some grounds for alter ego liability. Under California law, "the plaintiff must establish a prima facie case (1) that there

---

[5] While Snyder's continuing duty and fraudulent conveyance theories are admittedly weak, Defendants have not established that Snyder cannot possibly establish those claims.

3

is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist; and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001) (internal quotation marks omitted) (alterations in original).

While the defendants' arguments against the weakness of Snyder's arguments are well taken, given the heavy burden, the Court finds that they have not shown fraudulent joinder here. It is true that Snyder did not allege much to support a showing of alter ego liability. Her arguments that CooperCo had a continuing duty to warn or that CooperCo is liable on a successor theory because there was a fraudulent transfer involved gloss over this intermediate, but necessary step of showing alter ego liability to connect CooperSurgical to CooperCo.

In evaluating whether there is fraudulent joinder, the bar is simply whether "there is *any* possibility that the state law might impose liability on a resident defendant," *Hunter*, 582 F.3d at 1044 (9th Cir. 2009) (quoting *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007)) (emphasis added). This is a very low bar. Even the fact that a plaintiff's claim against a particular defendant cannot withstand a Rule 12(b)(6) motion does not necessarily mean that that defendant was fraudulently joined. *See Grancare*, 889 F.3d at 550 ("If a plaintiff's complaint can withstand a Rule 12(b)(6) motion with respect to a particular defendant, it necessarily follows that the defendant has not been fraudulently joined. But the reverse is not true.").

Snyder has met this low bar. In fact, just recently, another court in this district remanded an almost identical case brought against the Defendants. *See Martha Garcia v. Teva Womens Health, LLC*, No. 20-cv-07920, 2020 WL 7059201 (C.D. Cal. Dec. 2, 2020). The Court is satisfied that Snyder might possibly establish liability against CooperSurgical on the grounds that it breached a continuing duty to warn. *See, e.g.*, Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code*, § 2-314:511 ("The purchaser of a manufacturer's assets may be subject to liability for breach of a post-sale duty to warn"). While the Defendants argue that the 2017 APA did not provide that CooperSurgical would assume any obligations connected to ParaGard devices sold before the purchase, it is not clear to the Court that this private agreement should be read restrictvely as the sole source of obligations assumed by CooperSurgical. Additional duties may be imposed by extraneous sources, such as the regulatory regime that the ParaGard is subject to by the FDA. The Defendants make much of the fact that CooperCo is a holding company and "does not manufacture or sell any products." Opp. at 10. However, this

4

argument does nothing to address whether CooperSurgical had a continuing duty to warn. Rather, it goes towards whether or not there is a viable alter ego theory of liability to hold CooperCo responsible for CooperSurgical's liabilities (such as a breach of its continuing duty to warn). The fact that CooperCo is merely a holding company and that neither CooperCo nor CooperSurgical share any officers or directors with the TEVA Defendants is not particularly dispositive. *See* Opp. at 4 (observing that none of the officers or directors of CooperSurgical or CooperCo is an officer of Teva USA, TWH, Inc., or TWH, LLC), *see also* Declaration of Cynthia Wallace ("Wallace Decl.") at ¶¶ 4-17.[6] However, Defendants have not established the absence of factors which could be employed to find an alter ego relationship between the Cooper Defendants − *e.g.,* "identical equitable ownership, comingling of funds, use of the same offices, disregard of formalities, . . . use of one entity as a mere shell for the affairs of another . . . . [and] a corporate entity is so undercapitalized that it is likely to have no sufficient assets to meet its debts." *Butler America, LLC v. Aviation Assurance Co., LLC*, 55 Cal. App. 5th 136, 146 (2020).

Finally, Defendants strongly press the contention that CooperCo was not a party to the APA and thus "is 'not a party to any relevant contract on which plaintiff could predicate a claim against [Cooper]'. . . ." *See* Opp. at 13, quoting *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002). However, the Court notes that APA includes an "Exhibit E" which is a "Guarantee" issued by CooperCo on September 11, 2017 to Teva Pharmceutical Industries Ltd. wherein CooperCo agrees that, if CooperSurgical fails to make any payment or perform any covenant or agreement under the APA, it "shall promptly and fully make, or cause to be made, that payment or perform, or cause to be performed, that covenant in place of [CooperSurgical]."[7] *See* APA at 117. The Guarantee further provides that:

> Without waiving or limiting any provision of the APA, [CooperCo] hereby waives (a) notice of acceptance of this Guarantee by any Person, (b) notice of the

---

[6] The Defendants point to the decision of another court in this district, which denied a motion to remand in a case involving a similar level of factual allegations going towards alter ego liability. *See Higley v. Cessna Aircraft Co.*, No. 10-cv-03345, 2010 WL 3184516 (C.D. Cal. July 21, 2010). It found that "Plaintiffs' allegations are . . . insufficient to establish that 'the degree of control exerted over the subsidiary by the parent is enough to reasonably deem the subsidiary an agent of the parent under traditional agency principles.'" *Id.* at *3. However, the Court believes that the court in *Higley* applied a more demanding standard – something closer to a Rule 12(b)(6) standard – than what the Ninth Circuit later put forth in *Grancare* for fraudulent joinder. While the Snyder's allegations of alter ego liability against CooperCo may not be sufficient to survive a Rule 12(b)(6) motion, the Court cannot say that there is no possibility that state law would not impose liability against CooperCo.

[7] The Guarantee was executed by Randal Golden, the Vice-President and General counsel of CooperCo. *See* APA at 121.

5

    amount of indebtedness or extent of performance owing under this Guarantee, (c) notice of demand for payment, notice of default or non-payment or non-performance, presentment, protest, notice of protest, and notice of dishonor, (d) any defense based on any change in the corporate existence, structure or ownership of [CooperCo] or [CooperSurgical], or any insolvency bankruptcy, reorganization, liquidation or similar proceeding of [CooperCo] or [Cooper Surgical], or affecting any of their assets. [CooperCo] acknowledges that it will receive substantial direct and indirect benefits from the consummation of the Transaction, and that it is knowingly granting the waivers set out in this Section 5 in contemplation of those benefits.

*Id.* Clearly, CooperCo was involved in the APA and a participant in its execution.[8] The Guarantee would be evidence in regards to potentially establishing both CooperCo's participation in the purported fraudulent transfer as well as the assertion that there is an alter ego relationship between the Cooper Defendants.

### IV. Conclusion

  Based on the foregoing discussion, the Court **GRANTS** the motion to remand.

---

[8] Cynthia Wallace in her declaration in support of Defendants' opposition to the motion to remand was apparently mistaken when she swore that "The Cooper Companies, Inc., did not assume any liabilities with respect [sic] CooperSurgical, Inc.'s purchase of ParaGard assets pursuant to the asset purchase agreement." *See* Wallace Decl. ¶ 12.